**Boyd A. WARD, Plaintiff and Appellant,**

v.

**RICHFIELD CITY, a municipal corporation, et al., Defendants and Respondents.**

No. 880713–CA.

Court of Appeals of Utah.

June 14, 1989.

Rehearing Denied July 10, 1989.

---

George E. Brown, Jr., Midvale, for plaintiff and appellant.

Ken Chamberlain, Richfield, for defendants and respondents.

Before DAVIDSON, BILLINGS, and GARFF, JJ.

DAVIDSON, Judge:

This appeal concerns whether appellant, Boyd Ward, was properly dismissed as Richfield City Chief of Police. Ward claimed below that the Utah Open and Public Meetings Act was violated, that the Richfield City Council disregarded a temporary restraining order by taking further action to dismiss him as Chief of Police, and that his request for an administrative appeal was improperly denied. The trial court granted summary judgment in favor of Richfield City. We affirm.

## FACTS

On April 2, 1981, the Richfield City Council held a public meeting after publishing an agenda as required by Utah Code Ann. § 52-4-6 (1981). The agenda did not list Ward's discharge as Chief of Police. Following discussion of items on the agenda, the Council voted to hold a closed meeting and invited Ward to join them in discussing his position as Chief of Police. The Council was concerned about several recent resignations within the police department. Discussion of Ward's termination ensued and the Council decided to terminate Ward. The Council resumed open session and for-

mally voted to discharge Ward effective April 3, 1981.

On April 6, 1981, Ward submitted a written request to the Council for an administrative appeal pursuant to Utah Code Ann. §§ 10–3–1105 and –1106 (1981). The request was denied. On June 5, 1981, the Council published notice that a special meeting would be held on June 8, 1981, to ratify its actions taken at the April meeting. The Council published an agenda that included Ward's discharge as an item for discussion. Prior to the meeting, Ward served the Council with a temporary restraining order, to restrain it from taking any *further* action against him. Despite the temporary restraining order, the Council ratified its decision to terminate Ward.

On June 17, 1981, the trial court held a preliminary injunction hearing and determined that pursuant to the removal statute for chiefs of police, Utah Code Ann. § 10–3–911 (repealed 1987), it had no jurisdiction to hear the matter. Section 10–3–911 stated in part that "[t]he chief of police or fire department of the cities may at any time be removed, without a trial, hearing or opportunity to be heard, by the board of commissioners whenever in its opinion the good of the service will be served thereby."

Ward appealed the trial court's decision to the Utah Supreme Court and the court decided in *Ward v. Richfield City*, 716 P.2d 265 (Utah 1984), that the trial court did have jurisdiction because section 10–3–911 did not pertain to third class cities. The case was remanded to the trial court. On remand, the trial court granted summary judgment in favor of Richfield City. The court ruled that although the agenda for the April 2, 1981 meeting did not include the termination of Ward as Chief of Police, nevertheless, it was not in the public interest to void the Council's action at either the April 2 or the June 8 meeting.

Ward contends on appeal that: (1) the Council violated the Utah Open and Public Meetings Act in the April 2, 1981 meeting; (2) the Council, on June 8, 1981, acted in violation of the temporary restraining order; (3) the Council wrongfully denied him the right to appeal his discharge; (4) the

trial court erroneously applied the law in granting summary judgment in favor of Richfield City; and (5) he is entitled to reinstatement, back pay and damages.

UTAH OPEN AND PUBLIC
MEETINGS ACT

We first examine whether the Council violated the Utah Open and Public Meetings Act, Utah Code Ann. §§ 52–4–1 to –9 (1981), at the April 2, 1981 meeting and if so, whether the June 8 meeting cured any such violation. The purpose of the Utah Open and Public Meetings Act is to ensure that the actions of the state, its agencies, and political subdivisions are conducted openly. *See Common Cause of Utah v. Utah Public Serv. Comm'n*, 598 P.2d 1312 (Utah 1979). Political subdivisions, as defined in Utah Code Ann. § 10–1–201 (1981), include municipal corporations and municipalities. Utah Code Ann. § 10–3–601 (1981) provides that all meetings of the governing body of each municipality shall be held in compliance with the provisions of the open and public meetings law.

Ward contends that Richfield City failed to comply with the agenda and notice provisions of the open meetings law and that such failure should void the action taken at the April meeting. Ward argues that the subject of his discharge should have been listed on the agenda, even if discussions regarding him were conducted in a closed meeting. This contention fails for two reasons. First, the open meetings act designates certain subjects which are exempt from discussion in open meetings. *See* section 52–4–5. Where at least two-thirds of the public body present at an open meeting vote to hold a closed meeting to discuss the character, professional competence, or physical or mental health of an individual, then a closed meeting may be held. *See* section 52–4–4. The Council voted in the April open meeting to sequester themselves to discuss Ward's professional competence in compliance with section 52–4–4. The Council concluded the closed meeting with a unanimous vote, one member abstaining, to discharge Ward. Minutes of the closed meeting were recorded

and when the Council resumed open session, a formal vote to discharge Ward was taken.[1]

■ Second, even if technical violations had occurred in the April meeting, they were subsequently cured. On June 5, notice of the special session scheduled for June 8 was provided to the local newspaper and the radio station in compliance with the agenda and notice provisions of section 52–4–6(3). The agenda for the June 8 meeting included Ward's discharge and the media was notified more than twenty-four hours in advance. At the June meeting, the Council voted without opposition to ratify its actions taken at the April meeting. Ward argues that the action taken at the June meeting violated the temporary restraining order.[2] The order restrained the Council from taking any *further* action against him. Richfield City argues that the June meeting merely ratified action that had already been taken and, therefore, was not new action.

■ In a proceeding for violation of an injunction, it is generally held that the extent of the punishment rests in the sound discretion of the court. *See Hensley v. Board of Education*, 210 Kan. 858, 504 P.2d 184, 189 (1972); *People v. Mulgrew*, 19 Ill.App.3d 327, 311 N.E.2d 378, 383 (1974). "The inherent power of a court rendering a permanent injunction to enforce its decree and to modify or revoke the injunction for equitable reasons due to changed conditions is generally recognized...." *Mulgrew*, 311 N.E.2d at 382. The trial court held that it was not in the public's best interest to void the action taken by the Council in terminating Ward.

We will not disturb judgments in injunction proceedings that rest within the sound discretion of the trier of facts, unless an abuse of discretion clearly appears from the record. *See Hensley*, 504 P.2d at 188.

## RIGHT TO APPEAL DISCHARGE

■ The Mayor, with the advice and consent of the Council, appointed Ward to the position of Richfield City Chief of Police, pursuant to Utah Code Ann. § 10–3–916 (1981). This same body had the authority to dismiss Ward, without a hearing, notice, or cause. In *Hutchison v. Cartwright*, 692 P.2d 772, 773–774 (Utah 1984), the court held that unless otherwise controlled by statute, the power to suspend or dismiss is appurtenant to the power to appoint. "When an individual is appointed by an official, 'the office is held during the pleasure of the authority making the appointment, and ... no notice or charges or hearings are required for the suspension or removal by the authority appointing the officer.'" *Id.* at 774 (quoting *Sheriff of Salt Lake County v. Board of Comm'rs*, 71 Utah 593, 268 P. 783, 784 (1928)). "The rule of common law was that the appointment to municipal office carried with it no vested property interest in continued employment, and such officers were subject to removal without cause, reason or hearing unless otherwise prescribed." *Carlson v. Bratton*, 681 P.2d 1333, 1337 (Wyo.1984). Since the Utah Supreme Court determined that section 10–3–911 did not apply, there is not an applicable statute explicitly governing the dismissal of chiefs of police or city marshals in third class cities.[3] Therefore, based on common law, we conclude that the Mayor and the Council had independent

---

**1.** Prior to the closed session, the Council asked whether anyone present wanted to be notified if open session resumed. Most of those present were members of the media and they responded that they did not necessarily desire to return, but wanted to be advised if action was taken.

**2.** Ward asserts that he would have mobilized supporters had he known the Council planned on taking action despite the temporary restraining order. However, the Council was under no duty to notify Ward personally of its intended action.

**3.** Ward contends that the trial court erroneously applied Utah Code Ann. § 10–6–32 which was repealed in 1977. This section provided for the term of employment and removal of appointed officers, without cause, in first, second and third class cities. This section was not replaced with a statute expressly directing the removal of chiefs of police in third class cities. However, in light of our analysis that Ward does not have a right to appeal and that he can be removed without cause, we find that the trial court, nevertheless, reached the correct result. Therefore, the trial court's application of section 10–6–32 was harmless error.

authority to discharge Ward, without a hearing, notice, or cause.

■ Ward, nevertheless, contends that he has a right to appeal his discharge under sections 10–3–1105 and –1106. Section 10–3–1105 provides that "[a]ll appointive officers and employees of municipalities, *other than members of the police departments, fire departments, heads of departments*, and superintendents, shall hold their employment without limitation of time, being subject to discharge or dismissal only *as hereinafter provided.*" (Emphasis added.) Ward argues that he does not fall within the exception because he is not a member of a "police department" per se, but a city marshal with appointed assistants. However, we read sections 10–3–1105 and –1106 as specifically excluding him. Other sections in title 10 use the term "chief of police" interchangeably with "city marshal." *See, e.g.,* Utah Code Ann. § 10–3–918 (1986). As Chief of Police, we hold that Ward is both a member of a "police department" and the head of that "department."

Ward also argues that even if he falls within the exception to section 10–3–1105 because he is a chief of police, nevertheless, the language in the second sentence of section 10–3–1106 applies to "any officer." Because these sections must be read together and should harmonize with the purpose of the whole act, *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984), we hold that the language "as hereinafter provided" in section 10–3–1105 specifically modifies the sections that follow. "Separate parts of [an] act should not be construed in isolation from the rest of the act." *Id. See also Stahl v. Utah Transit Auth.*, 618 P.2d 480, 481 (Utah 1980). Therefore, "any officer" as appears in section 10–3–1106 must mean any officer not excluded in section 10–3–1105.

Our holding is in keeping with the rationale behind the power to discharge a chief of police without a hearing, notice, or cause. Since the chief of police is appointed to carry out the policies of the mayor "[t]he position of chief of police is clearly recognized as different than that of any other position in the police department for the obvious reason that the chief of police is in a position of making and carrying out policy for the mayor." *Carlson*, 681 P.2d at 1335. The result is there is no protected property interest in the position of chief of police. *Id.* at 1337.[4]

The summary judgment is affirmed.

BILLINGS and GARFF, JJ., concur.

---

4. Ward contends that he has a right to appeal under the "Richfield City Police Department Policies and Procedures Manual." The pertinent sections of the manual provide that a member of the department may request a review of disciplinary action by submitting a written request to the chief of police and that dismissals are subject to appeal to the Richfield City Appeals Board. However, these sections specifically pertain to officers under the supervision of the chief of police and not to the chief himself.