**Boyd A. WARD, Plaintiff and Petitioner,**

v.

**RICHFIELD CITY, a municipal corporation, et al., Defendants and Respondents.**

No. 890347.

Supreme Court of Utah.

Oct. 3, 1990.

---

George E. Brown, Jr., Midvale, for plaintiff and petitioner.

Ken Chamberlain, Richfield, for defendants and respondents.

HOWE, Associate Chief Justice:

This review concerns whether petitioner Boyd Ward was properly dismissed as Richfield City chief of police. Ward contended at both the trial court and the court of appeals that the Utah Open and Public Meetings Act was violated, that the Richfield City Council disregarded a temporary restraining order by taking further action to dismiss him as chief of police, and that his request for an administrative appeal was improperly denied. The trial court granted summary judgment in favor of Richfield City. The court of appeals affirmed in *Ward v. Richfield City*, 776 P.2d 93 (Utah Ct.App.1989). We granted certiorari to review all issues raised below.

In reviewing a grant of summary judgment, we consider the facts in the light most favorable to the losing party. *Owens v. Garfield*, 784 P.2d 1187, 1188 (Utah 1989); *Blue Cross and Blue Shield of Utah v. State*, 779 P.2d 634, 636 (Utah 1989). Our recited facts differ only slightly from those in the court of appeals' opinion. On April 2, 1981, the Richfield City Council held a public meeting after publishing an agenda as required by Utah Code Ann. § 52-4-6. The agenda did not list Ward's discharge as chief of police as a matter to be considered. Following discussion of items on the agenda, the "meeting went into executive session on a consensus of the council at 6:10 p.m." Members of the public were excluded. One member of the public, Kent Colby, requested that the council inform him when the closed meeting ended if further action affecting the community was to be taken in an open meeting. The council discussed Ward's termination and decided to discharge him. It resumed open session at 9:20 p.m. but failed to notify Colby. The council then formally voted in the open session to discharge Ward effective the 3rd of April.

On the 6th of April, Ward submitted a written request to the council for an administrative appeal pursuant to Utah Code Ann. §§ 10-3-1105 and -1106. The request was denied. On June 2, 1981, Ward informed the council that he intended to take legal action pursuant to the Utah Open and Public Meetings Act. On June 5, the council published notice that a special meeting would be held on June 8 to ratify its action taken at the April 2 meeting. The council published an agenda that included Ward's discharge as an item for consideration. Prior to the meeting, Ward commenced this action and served the council with a temporary order restraining it from taking any further action against him. Despite the temporary restraining order, the council ratified its decision to terminate Ward.

On June 17, the trial court held a preliminary injunction hearing and determined that, pursuant to the removal statute for chiefs of police, Utah Code Ann. § 10-3-911 (repealed 1987), it had no juris-

diction to hear Ward's complaint and dismissed it. Ward appealed that dismissal to this court. *Ward v. Richfield City,* 716 P.2d 265 (Utah 1984). We set aside the order of dismissal, holding that the trial court did have jurisdiction because section 10–3–911 did not pertain to third class cities such as Richfield. The case was remanded to the trial court, which granted summary judgment in favor of Richfield City, ruling that, although the agenda for the April 2, 1981 meeting did not include the termination of Ward as chief of police, it was not in the public interest to void the council's action at either the April 2 or the June 8 meeting.

■ We first examine whether the council violated the Utah Open and Public Meetings Act, Utah Code Ann. §§ 52–4–1 to –9 at the April 2 meeting and, if so, whether the June 8 meeting cured the violation. The trial court's interpretation of a statute presents a question of law. *Asay v. Watkins,* 751 P.2d 1135, 1136 (Utah 1988); *Gonzales v. Morris,* 610 P.2d 1285, 1286 (Utah 1980). We accord conclusions of law no particular deference, but review them for correctness. *E.g., State ex rel. Division of Consumer Protection v. Rio Vista Oil Ltd.,* 786 P.2d 1343, 1347 (Utah 1990); *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

■ Ward contends that Richfield City failed to comply with the agenda and notice provisions of the open meetings law and that such failure should void the action taken at the April 2 meeting. He argues that the subject of his discharge should have been listed on the agenda, even if discussions regarding him were conducted in a closed meeting. We agree that the purposes of the Open and Public Meetings Act would have been better served if the subject of Ward's discharge had been listed on the agenda. While, as the trial court stated, "[t]he absence of an item of business on the Agenda does not preclude its consideration," it would clearly violate the public policy behind the Act to strategically hide sensitive public issues behind the rubric of "other business." Such a stratagem is not alleged in this case. Indeed, the

council sought to cure any possible violation of the Act by holding a fully publicized meeting on Ward's discharge on the 8th of June. We therefore agree with the court of appeals that "if technical violations had occurred in the April meeting, they were subsequently cured." *Ward v. Richfield City,* 776 P.2d at 96.

■ Ward also contends that the failure of the council to inform Colby of the resumption of open session rendered the session which followed a *de facto* closed session at which a final resolution of discharge was approved in violation of section 52–4–4. It was poor practice on the part of the council to tell a member of the public that he would be informed when open session resumed and then fail to do so. However, it was not a violation of the Act. The council lawfully closed the meeting to discuss "the character, professional competence, or physical or mental health of an individual." § 52–4–5(1)(a). The Act imposes no requirement on the council to notify anyone when it resumes open session after holding closed session. Members of the public who do not wish to wait near the council's meeting room during closed sessions may ask to be notified upon the resumption of open session. However, notification is merely a matter of courtesy, not of right. The council's failure to notify members of the public who have gone home or back to their offices is not a violation of the Act.

■ Ward next contends that the actions of the council taken on June 8 in violation of the temporary restraining order should be void. However, as the court of appeals stated:

In a proceeding for violation of an injunction, it is generally held that the extent of the punishment rests in the sound discretion of the court.... The trial court held that it was not in the public's best interest to void the action taken by the Council in terminating Ward. We will not disturb judgments in injunction proceedings that rest within the sound discretion of the trier of facts, unless an abuse of discretion clearly appears from the record.

776 P.2d at 96 (citations omitted). The violation of the temporary restraining order did not void the action taken at the June 8 meeting. The power to void was within the trial court's discretion, and we find no abuse of discretion in the declination to exercise that power.

█ Ward next contends that the district court and the court of appeals erred in ruling that he did not have a right to appeal his discharge under sections 10–3–1105 and –1106. Section 10–3–1105 provides:

All appointive officers and employees of municipalities, *other than* members of the police departments, fire departments, *heads of departments*, and superintendents, shall hold their employment without limitation of time, being subject to discharge or dismissal only as hereinafter provided.

(Emphasis added.) Section –1106 provides for an appeal by a discharged officer or employee covered by section –1105. Ward argues, as he did below, that only cities of the first and second classes have police "departments" and consequently he was not the "head of a department" within the meaning of section –1105 and was therefore not excluded from an appeal. He relies upon section 10–3–909, where first and second class cities are mandated to "create, support, maintain, and control" police departments. He compares that mandate to section 10–3–916 and –918, where the mayors of third class cities are directed to appoint chiefs of police or marshals, who in turn are given authorization to appoint assistants. No mention is made in those sections about a police "department." While Ward's argument gives us some pause, we conclude that the mandate in section –909 for first and second class cities to have police departments was not meant to exclude third class cities from also having police departments. It is clear that third class cities may have "departments" in their administration. *See* § 10–3–811. While sections 10–3–916 and –918 direct the mayor in a third class city to appoint a chief of police or marshal and authorize the latter to appoint assistants but make no reference to a police "department" in those cities, a succeeding section, section 10–3–920, directs the mayors of third class cities to appoint bail commissioners from among "the officers and members of the police department."

We have previously held:

If there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in the light of its objective, and to harmonize its provisions in accordance with the legislative intent and purpose.

*Osuala v. Aetna Life & Cas.*, 608 P.2d 242, 243 (Utah 1980) (footnotes omitted). Applying this rule of statutory construction, we find that Ward's interpretation of section –1105 is in disharmony with other sections of the municipal code (Utah Code Ann. title 10). We therefore agree with the court of appeals that the intent of the legislature was to specifically exclude Ward, as chief of police and hence head of a police department, from the appeal provisions of sections 10–3–1105 and –1106.

█ Ward finally contends that the court of appeals erred in finding that he had no right to appeal under the Richfield City Police Department Policies and Procedures Manual. Policy No. 10 provides: "Final departmental disciplinary authority and responsibility rests with the Chief of Police." It further provides:

A member of the Department may request a review of disciplinary action by submitting a written request to the Chief of Police. Additional appeal procedures may be followed as outlined in the Richfield City Personnel Policies and Procedures manual.

Dismissals are subject to appeal to the Richfield City Appeals Board.

Our conclusion echoes that of the court of appeals: "[T]hese sections specifically pertain to officers under the supervision of the chief of police and not to the chief himself." 776 P.2d at 97 n. 4. Ward presented no "additional appeal procedures" from the policies and procedures manual that could be construed to give him a right to appeal his dismissal.

We affirm the decision of the court of appeals.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.