**Jim HUNSAKER, individually and on behalf of the deceased Maurine F. Hunsaker, and Betty Sudweeks on behalf of Matt Hunsaker, Nicholas Hunsaker, and Dana Hunsaker, minor children of Jim and Maurine F. Hunsaker, Plaintiffs and Appellants,**

v.

**STATE of Utah, a body politic, Gary De-Land, as director of Utah State Department of Corrections, Utah State Department of Corrections, Utah State Board of Pardons and Parole, Myron March as director of Utah State Department of Adult Probation and Parole, Ray Wall, as regional supervisor, Region III of Utah State Department of Adult Probation and Parole, Kent Jones and Joe Smout, as supervisors of John Shepard of the Utah State Department of Adult**

Probation and Parole, John Shepard, in his capacity as parole officer, Utah State Department of Adult Probation and Parole, Gas–A–Mat Oil Corp. of Colorado, a Colorado corporation, and John Does I–V, Defendants and Appellees.

No. 910366.

Supreme Court of Utah.

Nov. 30, 1993.

P. Gary Ferrero, Salt Lake City, for plaintiffs R. Paul Van Dam, Atty. Gen., Debra J. Moore, Asst. Atty. Gen., for State defendants.

Gary L. Johnson, Salt Lake City, for Gas–A–Mat.

HALL, Chief Justice:

Plaintiffs appeal from a summary judgment entered in favor of defendant State of Utah on plaintiffs' wrongful death claim arising from the kidnapping and murder of Maurine Hunsaker by Ralph Leroy Menzies, a parolee from the Utah State Prison. Plaintiffs also appeal the district court's grant of defendant Gas–A–Mat Oil Corporation of

Colorado's ("Gas–A–Mat") motion to dismiss plaintiffs' claims against it. We affirm.

Maurine Hunsaker was employed by Gas–A–Mat as a cashier. On February 23, 1986, she was on duty at a Gas–A–Mat service station located in Salt Lake County. On that same date, Menzies abducted her from Gas–A–Mat and later murdered her.

At the time of the murder, Menzies was on parole from the Utah State Prison. He had been serving two sentences of five years to life for aggravated robberies committed in 1976 and 1978 and one sentence of one to fifteen years for a 1978 escape. Menzies was paroled on October 9, 1984. From the time of his parole to the time of Hunsaker's abduction, Menzies regularly reported to his parole officer, John Shepard, as required by his parole agreement. During this time, Menzies held various jobs and had no substantial periods of unemployment. Shepard contacted Menzies frequently, usually finding everything in order.

Menzies' parole agreement provided, among other things, that he maintain mental health counseling and complete a halfway house program. In November 1984, the Board of Pardons eliminated the halfway house requirement. In April 1985, Menzies underwent a psychological evaluation, after which the treating psychologist reported that Menzies did not need further psychotherapy. While Shepard considered the mental health counseling requirement to be completed, Menzies' parole agreement was never modified to eliminate this requirement.

In December 1984, a woman contacted Shepard, claiming that Menzies had threatened her son with a gun. Shepard spoke with the alleged victim and detained Menzies at the Salt Lake County Jail. After a police investigation, the claim was retracted, and no further action was taken. The case was dismissed, and Menzies was released. No incident report of a parole violation was filed.[1]

In May 1985, Menzies turned in an automatic pistol to Shepard. Menzies' parole agreement specifically prohibited him from possessing a firearm. Menzies claimed to have taken the pistol from another parolee to prevent the parolee from committing a crime. Shepard investigated and determined that neither the gun nor Menzies was connected to any recent crimes. Shepard believed that Menzies had acted in good faith and took no further action. No incident report of a parole violation was filed.

In December 1985, Shepard discovered stolen truck tires and Christmas decorations at Menzies' home. Shepard had Menzies arrested and booked into the Salt Lake County Jail for theft of the tires. Shepard made arrangements to place Menzies in the Intensive Supervision Program to provide stricter supervision over him.[2] On February 10, 1986, Menzies pleaded guilty to attempted theft, a class A misdemeanor, and was scheduled for sentencing on March 11, 1986. He was released pending sentencing. No incident report of a parole violation was filed.[3] Shepard stated that he planned to report Menzies' theft conviction to the Board of Pardons before the March 11 sentencing.

In the meantime, sometime in January 1986, a warrant to arrest Menzies for theft of the Christmas decorations was prepared and issued. No incident report of a parole violation was filed. Hunsaker was murdered on February 23, 1986. On February 24, 1986, Menzies was arrested pursuant to the earlier warrant issued against him for theft of the Christmas decorations.

On February 27, 1986, the Salt Lake County Sheriff's office informed Shepard that

1. Rule 11.01–A of Policies and Procedures of the Utah Board of Pardons required the supervising parole officer to submit an incident report to the Board "when an incident, positive or negative, occurs which would serve to modify the conditions of parole or a parolee's status."

2. The Intensive Supervision Program agreed to accept Menzies on the condition that he was not imprisoned for theft of the tires and was placed on probation with the program. Menzies was arrested and charged with Hunsaker's murder before his sentencing for the tire theft and therefore was never placed in the program.

3. In addition to the requirement under rule 11.-01–A of the Policies and Procedures of the Board of Pardons, section 6.11 of Parole Violation Procedure required that parole violations be investigated immediately and that a report be forwarded to the Board of Pardons within 72 hours following the filing of formal charges or arrest.

Menzies was suspected of murder. This was the first time Shepard learned of Hunsaker's murder. Menzies was detained without bail, charged with capital homicide, and later convicted by a jury.

In June 1987, Hunsaker's surviving husband and children filed a complaint against the State,[4] claiming that the negligent parole of Menzies and the subsequent failure to supervise his parole were the cause of Hunsaker's death. Specifically, plaintiffs claimed that the State was negligent in failing to report Menzies' parole violations before Hunsaker was kidnapped and murdered. In December 1990, after extensive discovery proceedings, the State moved for summary judgment.[5] In support of its motion, the State submitted the affidavit of Victoria Palacios, a member of the Board of Pardons. The affidavit provided, among other things, that in 1986 and 1987 the Board of Pardons had a policy of pursuing alternatives other than imprisonment for those who violated parole. As part of this policy, the Board of Pardons' general practice was to wait for the final disposition of pending criminal charges before it revoked the parole of a parolee accused of committing new crimes. In making its decisions, the Board of Pardons usually followed the recommendations of the supervising parole agent as to whether a parolee should be reincarcerated for a parole violation. The Palacios affidavit further provided that Menzies' theft of the tires and the Christmas decorations would not necessarily have been grounds for revoking Menzies' parole status and that great deference would have been given to the parole agent's recommendations to allow Menzies to remain at large while awaiting sentencing for the theft conviction. The district court concluded that the facts were not in dispute and that the

State was entitled to judgment as a matter of law.

In addition to the State defendants, plaintiffs included Gas–A–Mat as a defendant. They claimed that Gas–A–Mat was acting in a "dual capacity," as both an employer and a provider of security. Plaintiffs claimed that as a provider of security, Gas–A–Mat breached its duty of due care and is therefore liable for Hunsaker's death. Gas–A–Mat responded by moving to dismiss plaintiffs' claims, asserting that the Utah Workers' Compensation Act provides the exclusive remedy for the death of an employee[6] and that under Utah law, the dual capacity doctrine does not provide an exception to the exclusive remedy provisions of the Workers' Compensation Act. The district court granted Gas–A–Mat's motion to dismiss.

Plaintiffs bring this appeal, challenging the district court's granting of the State's motion for summary judgment and Gas–A–Mat's motion to dismiss.

We turn first to plaintiffs' claim against the State. A grant of summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[7] Because summary judgment is granted as a matter of law, we review the trial court's legal conclusions for correctness, according them no deference.[8]

Plaintiffs argue that the State was negligent in its supervision and control of Menzies and is therefore liable for Hunsaker's death. In support of their negligence claim against the State, plaintiffs contend that by virtue of the State's special relationship with Menzies, the State had a duty to the general public, which included Hunsaker. Specifically, plaintiffs assert that the State had a special

4. In addition to naming the State of Utah as a defendant, plaintiffs named various individuals and state agencies involved in corrections and probation. For purposes of this appeal, defendants with a connection to the State will be referred to collectively as the "State."

5. The State's motion for summary judgment was actually a renewal of an earlier motion. The State had moved for summary judgment on May 23, 1990. The motion was denied, subject to later reconsideration.

6. After Hunsaker's death, plaintiffs filed for workers' compensation benefits under the Utah Workers' Compensation Act and subsequently received those benefits.

7. Utah R.Civ.P. 56(c); *Smith v. Batchelor*, 832 P.2d 467, 470 (Utah 1992); *Landes v. Capital City Bank*, 795 P.2d 1127, 1129 (Utah 1990).

8. *Smith*, 832 P.2d at 471; *Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990).

relationship with Menzies stemming from its responsibility to oversee his parole, which included general supervision, unscheduled visits, and the requirement that he meet all the terms and conditions of his parole. Plaintiffs further assert that while Menzies was under the State's supervision, the State was aware of his "violent propensities" and that it was therefore foreseeable that Menzies might be dangerous. In addition, plaintiffs assert that Hunsaker as a "person serving the public" fell within a class of persons in foreseeable danger because Menzies had previously harmed a person serving the public.

Plaintiffs claim that the specific standard of care required of the State was to follow its own established procedures. Such procedures required those charged with supervising a parolee to report all violations or suspect incidents to the Board of Pardons. Based on the information in the report, the Board of Pardons could then revoke parole. Plaintiffs point to four specific incidents during Menzies' parole which were not reported and claim that failure to report these "violations" contravened established procedures, thus denying the Board of Pardons the opportunity to exercise its authority over Menzies. Consequently, the State failed to meet the requisite standard of care. In short, according to plaintiffs, the State had a duty to control Menzies and it breached that duty when it did not comply with its own established procedures.

Regarding the issue of causation, plaintiffs argue that many facts remain in dispute and therefore it is a question for the jury to decide. Specifically, plaintiffs contend that what the Board of Pardons would have done had it been informed of Menzies' parole violations is in dispute—whether it would have revoked Menzies' parole or taken some other action. According to plaintiffs, any guess as to what the Board of Pardons would or would not have done is pure speculation. Finally, with regard to the issue of damages, plaintiffs submit that in light of Hunsaker's death, it is obvious they suffered damages.

█ To prevail on a negligence claim, a plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.[9] Inasmuch as resolution of the issue of duty is dispositive of plaintiffs' negligence claims, we first address that issue.

█ The issue of whether a duty exists is a question of law to be determined by the court.[10] The State defendants in the instant case owed no duty to Hunsaker or the other plaintiffs under the standards set out in our prior decisions.[11] No facts are alleged here that could bring into play the special relationship duty which would be a necessary premise for any negligence liability of the State actors. Specifically, there is no evidence from which a jury could conclude that Menzies has shown himself

> to be uniquely dangerous so that the actor upon whom the alleged duty would fall can be reasonably expected, consistent with the practical realities of that actor's relationship to the one in custody or under control, to distinguish that person from others similarly situated, to appreciate the unique threat this person presents, and to act to minimize or protect against that threat.[12]

Because the State owed no duty to Hunsaker, it is entitled to judgment as a matter of law.

█ We now turn to plaintiffs' claim against Gas-A-Mat. When determining whether the court properly granted a motion to dismiss, we accept the factual allegations in the complaint to be true and consider them and all reasonable inferences drawn

9. *Reeves v. Gentile*, 813 P.2d 111, 116 (Utah 1991); *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985).

10. *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989).

11. *See Higgins v. Salt Lake County*, 855 P.2d 231, 237–39 (Utah 1993); *Rollins v. Peterson*, 813 P.2d 1156, 1159–62 (Utah 1991); *Ferree*, 784 P.2d at 151–52.

12. *Higgins*, 855 P.2d at 237.

therefrom in a light most favorable to the plaintiff.[13] Because the propriety of a dismissal is a question of law, we review the trial court's legal conclusions for correctness, according them no deference.[14]

Plaintiffs contend that Gas–A–Mat is liable for Hunsaker's death under the dual capacity doctrine. Specifically, they assert that Gas–A–Mat was acting both as an employer and as a provider of security to Hunsaker. According to plaintiffs, Gas–A–Mat became a provider of security when it installed and displayed a sign that read, "Notice: Electronically Protected Against Robbery." Consequently, Gas–A–Mat had a duty to act as a reasonable provider of security and provide protection from foreseeable harm. Plaintiffs argue that robberies were foreseeable, that Gas–A–Mat was aware of potentially dangerous situations due to previous robberies, and that in light of those facts, it installed the sign. Gas–A–Mat breached its duty when it did not provide the necessary security to ensure Hunsaker's safety from foreseeable harm.[15] Plaintiffs urge this court to adopt the dual capacity doctrine and hold Gas–A–Mat liable for Hunsaker's death.

■ It is necessary to first examine the dual capacity doctrine to determine whether, under Utah law, it may be used by an injured employee, or in this case an employee's heirs, to avoid the preemptive effect of the exclusive remedy provision of the Workers' Compensation Act and proceed with a tort cause of action against an employer. The dual capacity doctrine has been defined as

"that theory under which an employer who normally enjoys immunity from common-law and statutory liability under the exclu-

sive remedy provision of workers' compensation law may become liable to an employee when acting in a capacity outside the employer-employee relationship, which capacity may impose obligations apart from those imposed as an employer." [16]

While we have not adopted the dual capacity doctrine in Utah, in two of our decisions we acknowledged the existence of the doctrine.[17] In both opinions, however, we concluded that under the facts of the case, the doctrine would not change the outcome for the plaintiff.[18]

■ In the present case, the trial court apparently granted Gas–A–Mat's motion to dismiss on the ground that workers' compensation was plaintiffs' exclusive remedy. Section 35-1-60 of the Utah Code provides:

The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, *shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever,* at common law or otherwise, to such employee or to his [or her] ... personal representatives, guardian, or any other person whomsoever, on account of any accident or injury or death, in any way contracted, sustained, aggravated or incurred by such employee in the course of or because of or arising out of his [or her] employment, and *no action at law may be maintained against an employer or against any officer, agent*

---

**13.** *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 196 (Utah 1991); *Lowe v. Sorenson Research Co.,* 779 P.2d 668, 669 (Utah 1989).

**14.** *St. Benedict's Dev.,* 811 P.2d at 196; *Lowe,* 779 P.2d at 669.

**15.** Plaintiffs contend that Gas–A–Mat, in upholding its duty as a provider of security, should have, among other things, installed a locked, bullet-resistant cashier's booth, trained employees on how to prevent injury of innocent third parties in the event of attempted theft or robbery, installed an adequate alarm system to signal authorities, and provided random surveillance by Gas–A–Mat security.

**16.** *Corr v. Willamette Indus., Inc.,* 105 Wash.2d 217, 219, 713 P.2d 92, 94 (1986) (quoting R. Carol Terry, Annotation, *Workmen's Compensation Act as Furnishing Exclusive Remedy for Employee Injured by Product Manufactured, Sold, or Distributed by Employer,* 9 A.L.R. 4th 873, 875 n. 2 (1981)).

**17.** *See Stewart v. CMI Corp.,* 740 P.2d 1340, 1341 (Utah 1987) (per curiam); *Bingham v. Lagoon Corp.,* 707 P.2d 678, 679–80 (Utah 1985).

**18.** *Stewart,* 740 P.2d at 1342; *Bingham,* 707 P.2d at 680–81.

*or employee of the employer based upon any accident, injury or death of an employee.*[19]

In addition to section 35–1–60, which provides that workers' compensation shall be the exclusive remedy against an employer, section 35–1–62 reinforces that restriction by permitting suits for damages only against persons other than the employer, officer, agent, or employee of the employer. Section 35–1–62 provides:

When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person *other than an employer, officer, agent, or employee of said employer*, the injured employee, or in case of death his [or her] dependents, may claim compensation and the injured employee or his [or her] heirs or personal representative may also have an action for damages against such third person.[20]

Sections 35–1–60 and 35–1–62 make it clear that the intent of the legislature is to provide an exclusive remedy for job-related injuries. The dual capacity doctrine directly conflicts with the exclusive remedy provision of section 35–1–60. The exclusive remedy principle embodies the basic quid pro quo that underlies Utah's workers' compensation scheme.[21] As we stated in *Bingham*, "The essence of a workers' compensation system is that it is a mutual arrangement of reciprocal rights between an employer and an employee whereby both parties give up and gain certain advantages."[22] Under the workers' compensation scheme, employees are able to recover for job-related injuries without showing fault or being subject to defenses such as the fellow servant rule and employers are protected from tort suits by employees. Application of the dual capacity doctrine would be inconsistent with this bargain, thus denying Gas–A–Mat the exclusive remedy protection intended by the Workers' Compensation Act.

While we do not reject the possibility that some variation of the dual capacity doctrine might coexist with the Workers' Compensation Act,[23] the doctrine simply has no application in this case. As we noted in *Bingham:*

"The decisive test to determine if the dual capacity doctrine is invocable is not whether the second function or capacity of the employer is different and separate from the first. Rather, the test is whether the employer's conduct in the second role or capacity has generated obligations that are unrelated to those flowing from the company's or individual's first role as an employer. If the obligations are related, the doctrine is not applicable."[24]

Under the facts of the present case, there is no basis to conclude that Gas–A–Mat's taking certain measures in an attempt to provide security for employees and patrons created any obligations unrelated to Gas–A–Mat's obligations as an employer. Rather, Gas–A–Mat's efforts to provide security were part of its obligations and closely related to its role as an employer.

In light of the foregoing analysis, we find no error in the district court order dismissing Gas–A–Mat as a defendant in this action. We have considered plaintiffs' remaining arguments and find them to be without merit. We therefore affirm the district court's grant of the State's motion for summary judgment and Gas–A–Mat's motion to dismiss.

HOWE, A.C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**19.** Utah Code Ann. § 35–1–60 (emphasis added).

**20.** Utah Code Ann. § 35–1–62 (emphasis added).

**21.** *See, e.g., Adamson v. Okland Constr. Co.,* 29 Utah 2d 286, 288–89, 508 P.2d 805, 807 (1973); *Ortega v. Salt Lake Wet Wash Laundry,* 108 Utah 1, 7, 156 P.2d 885, 887–88 (1945); *Utah Fuel Co. v. Industrial Comm'n,* 57 Utah 246, 251–52, 194 P. 122, 124 (1920).

**22.** 707 P.2d at 679.

**23.** *See generally* 2A Arthur Larson, *Workmen's Compensation Law* § 72.81, at 14–290.88 to – 290.111 (1993).

**24.** 707 P.2d at 680 (quoting *McCormick v. Caterpillar Tractor Co.,* 85 Ill.2d 352, 356, 423 N.E.2d 876, 878 (1981)).