**Frank H. FEICHKO, Jr., Plaintiff,**

v.

**DENVER & RIO GRANDE WESTERN RAILROAD, Defendant.**

**No. 2:95 CV 1068 K.**

United States District Court, D. Utah, Central Division.

Aug. 10, 1998.

---

John J. Rossi, Rossi Cox Kiker & Inderwish, Aurora, CO, Richard I. Ashton, Ashton Braunberger & Boud PC, Sandy, UT, for Plaintiff.

Casey K. McGarvey, E. Scott Savage, David P. Williams, Berman Gaufin Tomsic & Savage, Salt Lake City, UT, for Defendants.

## . ORDER

KIMBALL, District Judge.

This matter is before the Court on Plaintiff Frank Feichko, Jr.'s *Motion for Partial Summary Judgment*, determining that Defendant Denver & Rio Grande Western Railroad ("Denver & Rio Grande") is negligent as a matter of law and that Plaintiff was not contributorily negligent as a matter of law, and Denver & Rio Grande's *Cross Motion for* *Complete Summary Judgment*. Oral argument was held on August 7, 1998, where Denver & Rio Grande's recently-filed *Motion for an Order Prohibiting Plaintiff from Raising a New Claim or Alternatively Granting a Continuance* was also considered. This Order sets forth the Court's ruling on these three motions, which were taken under advisement after oral argument.

### BACKGROUND

. Plaintiff is an experienced railroad engineer and was employed as such by Denver & Rio Grande. On January 11, 1993, Plaintiff's day off, Plaintiff was involved in an accident that occurred on Denver & Rio Grande's yard in Helper, Utah.

Plaintiff had gone to the yard on that day to search for his missing checkbook. Before entering the yard, Plaintiff first sought and obtained permission from his supervisor to look for the checkbook in the cabs of two parked locomotives. While he was in the cab of Locomotive 5390, a "consist" of four engines operated by Jesse Needles, another Denver & Rio Grande engineer, crashed into it, knocking him to the floor and allegedly causing him to sustain serious injuries.

The exact cause of the accident has never been established. Following the accident, the consist's brakes were tested and found to be in working order. Needles and the brake operator, who was also on the consist, both testified that as they were slowing the consist, it suddenly sped up and slid, as a car would on black ice.

Plaintiff asserts that the only explanation for the accident is negligence on the part of Denver & Rio Grande and claims that Denver & Rio Grande is liable for Plaintiff's injuries as a matter of law. Plaintiff first asserts that the consist was operating faster than allowed under Denver & Rio Grande's operating rules. The accident occurred on a fuel track, where pursuant to the operating rules, trains are to operate no faster than five miles per hour. The consist was equipped with a Pulse Locomotive Event Recorder System, which recorded the consist's speed of operation and showed that it was traveling at 8 miles per hour at the moment the accident occurred.

Plaintiff also asserts that the consist was traveling faster than allowed under federal regulations, which require railroads to have operating rules in effect that require trains and engines moving within yard limits to be prepared to stop within one half the range of vision. *49 CFR § 218.35(2).*

Finally, Plaintiff also asserts that blue flags should have been posted around Locomotive 5390 to signal that work was being performed on it. Federal regulations require that when workers are going on, under, or between rolling equipment, blue flags are to be displayed. *49 CFR § 218.29.* Once subject to such a "blue signal display," a train may not be coupled, moved, or passed. *Id.*

### STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences therefrom are to be examined in the light most favorable to the non-movant. *Id.*

### DISCUSSION

■ The parties dispute the duty of care Denver & Rio Grande, as a landowner, owed to Plaintiff. Under Utah law, the question of whether a duty exists is a question of law. *AMS Salt Industries, Inc. v. Magnesium Corp. of America,* 942 P.2d 315, 319 (Utah 1997) *(explaining that "a court may have to evaluate relevant facts and available evidence" to determine whether a duty exists, but that the issue should be submitted to a jury only when "there is disputed evidence* which is material to the relevant question of law"); *Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993).

■ As the Utah Supreme Court has made clear, the duty owed by a property owner to one who is injured on its property depends on the status of that person. *Tjas v. Proctor,* 591 P.2d 438, 441 (Utah 1979). Judge J. Thomas Greene previously issued a Memorandum Decision and Order, dated August 2, 1996, holding that Plaintiff did not have the status of an employee on the day the accident occurred. The undisputed facts demonstrate that Plaintiff was a licensee, that is, one who goes upon the land or premises of another by the express or implied permission of the landowner.

In *Tjas,* the Utah Supreme Court adopted the statement of a landowner's duties to a licensee set out in the *Restatement of Torts 2d. § 341,* which provides:

A possessor of land is subject to liability, to licensees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if (a) he should expect that they will not discover or realize the danger, and (b) they do not know or have reason to know of the landowner's activities and of the risks involved.

*Comment a* explains further:

If [the licensee] knows of the nature of the activities conducted upon the land and the manner in which they are conducted, he has all he is entitled to expect, that is, an opportunity for an intelligent choice as to whether or not the advantage to be gained by coming on the land is sufficient to justify him in incurring the risks involved.

The question for this Court to determine is whether Plaintiff knew of the nature of the activities conducted on the yard and the manner in which they are conducted. As an experienced engineer, the activities of railroading and moving locomotives, and their attendant risks, were well known to Plaintiff. As a Denver & Rio Grande engineer, Plaintiff had been given a copy of Denver & Rio Grande's Safety Rules to carry with him and had been tested on his knowledge of those rules, which provide, "Employees must ex-

pect the movement of trains, engines, cars or other equipment at any time, on any track, in either direction." Moreover, Plaintiff knew he was boarding a locomotive that was not protected by a blue signal display.

 Plaintiff first argues that he could not have anticipated negligent conduct and assumed only the risks attendant to an operation conducted in full and complete accordance with Denver & Rio Grande's operating rules and with all applicable federal regulations governing train operation. Such a narrow view of the risks assumed by licensees entering dangerous premises would effectively eliminate the traditional rules limiting recovery on the part of such licensees by applying a negligence standard any time negligence might have occurred.

Contrary to Plaintiff's assertion, the standard of care does not depend on the cause of the injury and whether Plaintiff could anticipate the cause as being negligent conduct; it depends on whether Defendant knew of a danger and should have expected that Plaintiff would not discover it or realize it existed. There is no evidence in the record indicating that the accident that actually occurred (one locomotive bumping into another) is different from the kind of accidents that make railroad yards relatively dangerous places.

Plaintiff next argues that an exception to the traditional rule exists when a landowner conducts "active" operations on its property, citing in support *Marchello v. Denver & Rio Grande Western R.R. Co.*, 576 F.2d 262 (10th Cir.1978). In *Marchello*, the landowner not only gave the licensee permission to enter onto its premises and use its bridge, but affirmatively directed the licensee's movements. The landowner was alleged to have explicitly and implicitly represented to the licensee that the bridge was safe when it was not. The Tenth Circuit reversed the lower court's grant of summary judgment in favor of the landowner. *Marchello* itself makes clear that "active" operations refers to "something in the nature of the giving of assurance to the licensee as to the safety of the premises." *Id.* 576 F.2d at 267 *(explaining that principle of active negligence is similar to principle imposing duty to exercise care following a gratuitous undertaking).* There is no evidence that Denver &

Rio Grande actively subjected Plaintiff to danger in this or any other sense.

Because Defendant owed no duty to Plaintiff under the circumstances, Plaintiff's claim must be dismissed as a matter of law. *AMS Salt Indus.*, 942 P.2d at 319; Hunsaker, *870 P.2d at 897*.

CONCLUSION

For the reasons set forth above, Defendant's cross motion for summary judgment is granted. All other pending motions are denied as moot. **Plaintiff's complaint is, accordingly, dismissed in its entirety.** Each party shall bear its own costs.