2013 UT App 65

# THE UTAH COURT OF APPEALS

NEIL BRETON,

*Plaintiff and Appellant,*

*v.*

CLYDE SNOW & SESSIONS AND HAL SWENSON,

*Defendants and Appellees.*

Memorandum Decision
No. 20110996-CA
Filed March 14, 2013

Third District, Salt Lake Department
The Honorable Anthony B. Quinn
No. 090919546

Jeffrey R. Oritt, Attorney for Appellant
Max D. Wheeler, Keith A. Call, and Melinda K. Bowen,
Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR.
and STEPHEN L. ROTH concurred.

CHRISTIANSEN, Judge:

¶1 This is a legal malpractice action sounding in negligence and breach of contract arising from a law firm's representation of a cotrustee. We affirm the district court's grant of summary judgment in favor of the law firm.

¶2 Neil Breton, a cotrustee of his father's trust, which is known as the Testamentary Grandchildren's Trust (the Trust), sought

counsel from the law firm Clyde Snow & Sessions and attorney Hal Swenson (collectively, Clyde Snow) regarding longstanding "intra-family disputes" with some of the beneficiaries of the Trust as well as with one cotrustee.[1] The beneficiaries of the Trust are Breton's fifteen nieces and nephews, three of whom are referred to as "the Slater Brothers." Breton retained Clyde Snow to assist him in making gifts from his personal funds to each of the beneficiaries and ultimately to "resolv[e] any outstanding issues and resolv[e] any potential claims of [the] beneficiaries against the cotrustees of the Trust." Upon consulting with Clyde Snow, Breton detailed the "lengthy history of bad feelings" and litigation between Breton and the Slater Brothers and their parents. Breton emphasized to Clyde Snow that he wanted them to create a plan that would be "all or nothing," meaning "either all beneficiaries would get payments and all would release the cotrustees, or none would get payments." Around December 2004, Clyde Snow drafted and mailed a release for each beneficiary to sign. In the release, each beneficiary would acknowledge "that the proposed payment of $24,000 from Neil Breton w[ould] be in full payment and satisfaction of [his or her] interest in the . . . Trust" and release Breton and his cotrustees "from any and all liability in connection with [his or her] interest in the . . . Trust."

¶3    Twelve of the fifteen beneficiaries signed the release. The three Slater Brothers did not sign but indicated that they would. Around February 2005, Breton knew that only twelve of the beneficiaries had signed the release, and he "never got any advice from [Clyde Snow] not to distribute any money until [he] had everybody's signatures." That month, Breton and three of his cotrustees distributed $24,000 to each of the twelve beneficiaries who had signed the release. In September 2005, instead of signing

---

[1]"When reviewing summary judgment, we recite the facts in a light most favorable to the nonmoving party," in this case, Breton. *See Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1286 (Utah Ct. App. 1996).

the release, each of the Slater Brothers demanded $66,666.66 for their signatures, and in June 2007, the Slater Brothers filed a lawsuit in California against the trustees. The California lawsuit settled in January 2009.

¶4    Breton filed the current action in November 2009, alleging, among other things, that Clyde Snow breached its legal services contract and committed legal malpractice, specifically, in failing to give legal advice and concerning its drafting of the release. Breton's complaint alleges that Clyde Snow's ineffective legal work created a situation wherein the Slater Brothers acquired an economic incentive to initiate litigation against Breton because the brothers became the sole beneficiaries of the Trust once the twelve other beneficiaries had signed the release.

¶5    In response to Breton's allegations, Clyde Snow filed a motion for summary judgment, arguing that the undisputed facts did not support Breton's economic-incentive-causation theory. Clyde Snow argued that the Slater Brothers wished to sue Breton, in the context of a long history of family conflict, because Breton breached his fiduciary duty as trustee and not because of any economic incentive. Clyde Snow also argued that Breton and his cotrustees made the decision to pay each of the twelve beneficiaries $24,000, even though they knew the Slater Brothers had not signed the release and retained their right to sue.

¶6    After oral arguments, the district court orally granted Clyde Snow's motion for summary judgment based solely on the court's determination that there was an intervening cause because Breton broke the chain of causation when he decided to pay the twelve beneficiaries without first obtaining a release from all fifteen beneficiaries. Breton did not deny that, at the time he distributed the money to the twelve beneficiaries, he was aware that the Slater Brothers had not signed the release. According to his deposition testimony, Breton knew that the Slater Brothers "would be free to sue me" if they did not sign the release. The district court concluded,

> [H]ow can there be causation if . . . Breton already
> knew what he wanted to be advised by his
> lawyer . . . . [I]t really comes down to what was
> caused by the failure to specifically advise . . . Breton
> that if you don't get all 15 to sign you're still at risk,
> and you distribute to the 12 you're still at risk for
> being sued by the other three. And I think that it's so
> clear in anybody's mind that [Breton] was still at risk
> to be sued by the . . . three [Slater Brothers] that the
> failure to tell him that was not the cause of what
> happened.

Although the court explicitly ruled that reasonable inferences drawn from the facts would preclude summary judgment as to Clyde Snow's other arguments, it dismissed the case with prejudice because it ruled that the intervening cause was determinative.

¶7      On appeal, Breton argues that the district court erred when it granted summary judgment in Clyde Snow's favor because whether Breton's payment to twelve of the fifteen beneficiaries was an intervening cause that broke the chain of causation raises a genuine issue of material fact. Breton contends, as he did below, that Clyde Snow indisputably failed to create "an all or nothing" solution by drafting the release so that unless all fifteen of the beneficiaries signed it, the release would not become effective. Breton urges us to conclude that he raised a genuine issue of material fact not only as to whether Clyde Snow ineffectively drafted the release, but also as to whether Clyde Snow ineffectively failed to advise Breton not to pay the twelve beneficiaries before obtaining a release from all of the fifteen beneficiaries. Breton emphasizes that Hal Swenson testified that he did not think it was critical to have advised Breton to wait for all of the beneficiaries to sign the release before distributing the money. By ineffectively drafting the release and failing to give him appropriate advice,

Breton argues, Clyde Snow provided the Slater Brothers with an economic incentive to sue him.[2]

¶8     We "affirm [a] grant[] of summary judgment only when no genuine issues of material fact exist and when the moving party is entitled to 'judgment as a matter of law.'" *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1289 (Utah Ct. App. 1996) (quoting Utah R. Civ. P. 56(c)). "We . . . review the . . . court's grant of summary judgment for correctness" and "'view the facts, including all inferences arising from those facts, in a light most favorable to the party opposing the motion and will allow the summary judgment to stand only if the movant is entitled to judgment as a matter of law on the undisputed facts.'" *Id.* (quoting *Republic Grp., Inc. v. Won-Door Corp.*, 883 P.2d 285, 288–89 (Utah Ct. App. 1994)). We may also affirm the district court's entry of summary judgment on alternate grounds apparent in the record. *Commercial Real Estate Inv., LC v. Comcast of Utah II, Inc.*, 2012 UT 49, ¶ 14, 285 P.3d 1193.

¶9     Causation is the only disputed element of this legal malpractice action that we must address in this appeal. "'In a legal malpractice action, a plaintiff must plead and prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising

---

[2]As a side note, Breton contends that the district court misapprehended one aspect of his argument by believing that he was asserting that Clyde Snow should have advised him that any of the beneficiaries who did not sign the release retained the right to sue him and the other trustees, when instead he actually argued that Clyde Snow should have advised him not to distribute money until he had received all of the releases. We believe that the district court clearly understood Breton's argument when it concluded that there was no difference between the two ways of looking at the issue: "[Breton] knew, regardless of whether he paid the money or not, until he had all 15 signed he could still be sued by whoever did [not] sign and that's the ultimate cause . . . ."

from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages.'" *Crestwood Cove Apartments Bus. Trust v. Turner*, 2007 UT 48, ¶ 30, 164 P.3d 1247 (quoting *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996)). "To prevail in legal malpractice actions, clients must establish actual cause—that but for the attorney's wrong their loss would not have occurred—and proximate cause—that a reasonable likelihood exists that they would have ultimately benefited." *Kilpatrick*, 909 P.2d at 1291. "Proximate cause is that cause which, in natural and continuous sequence[ ] (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." *Harline*, 912 P.2d at 439 (alteration in original) (citations and internal quotation marks omitted). We are also tasked with determining whether an intervening cause broke the chain of causation in this case. "An intervening cause is an independent event, not reasonably foreseeable, that completely breaks the connection between fault and damages." *Kilpatrick*, 909 P.2d at 1293 (citing *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 487–88 (Utah Ct. App. 1991), *aff'd*, 862 P.2d 1342 (Utah 1993)).

¶10    "Causation is a highly fact-sensitive element of any cause of action" and "generally . . . cannot be resolved as a matter of law." *Id.* at 1292 (citation and internal quotation marks omitted). Moreover, "Utah courts have always recognized the fact-intensive nature of intervening cause inquiries." *Id.* at 1293. However, "proximate cause issues can be decided as a matter of law . . . when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts." *Harline*, 912 P.2d at 439. And although intervening cause inquiries are typically fact-intensive, they too can be decided as a matter of law. *See, e.g., Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶ 32, 194 P.3d 931 (determining causation on summary judgment where the facts were undisputed); *Dee v. Johnson*, 2012 UT App 237, ¶¶ 6–9, 286 P.3d 22

(holding that summary judgment was proper where the only reasonable conclusion that could be drawn from the undisputed facts was that the defendant's "negligent driving was [not] the cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred" (citation and internal quotation marks omitted)); *Bansasine v. Bodell*, 927 P.2d 675, 677 (Utah Ct. App. 1996) (affirming district court's summary judgment where a reasonable jury could not have found that the defendant caused the harm because he could not have foreseen the intervening cause of harm).

¶11     Because there were no genuine issues of material fact and Clyde Snow was entitled to summary judgment as a matter of law, we determine that the court did not err in granting summary judgment in Clyde Snow's favor. Significantly, Breton has not articulated below or on appeal any legal support for his theory that the Slater Brothers gained an economic incentive to sue him because they became entitled to a 100% interest in the corpus of the Trust after the other beneficiaries had been released. Clyde Snow cites the Restatement to support its argument that, in fact, once the other beneficiaries had been released, the Slater Brothers did not have a legal right to a 100% interest in the corpus of the Trust as damages, to the exclusion of the releasing beneficiaries. *See* Restatement (Third) of Trusts § 97 cmt. c(1) (2012) ("[T]he consent to or ratification of a breach of trust, or the granting of a release, by one or more of the beneficiaries does not preclude other beneficiaries of the trust from holding the trustee liable for the breach, insofar as their interests are affected."). Without deciding whether this rule of law applies to this case, we conclude that Breton has not advanced a persuasive legal argument to support his position that Clyde Snow's ineffectively-drafted release and lack of proper advice caused the Slater Brothers to sue him by giving them an economic incentive.[3] Clyde Snow could not have

---

[3]As indicated, *see supra* ¶ 9, we need not decide whether Clyde Snow actually breached the contract or its duty of care

(continued...)

reasonably anticipated that the Slater Brothers might come to a questionable legal conclusion, i.e., that as the only remaining non-releasing beneficiaries, they automatically became the beneficiaries of 100% of the corpus of the trust and therefore gained an economic incentive to sue Breton.

¶12    A logical fallacy known as *post hoc ergo propter hoc* (which translates to "after this and therefore because of this") underlies Breton's arguments below and on appeal. *See Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521–22 (10th Cir. 1987) (rejecting plaintiff's defamation claim because its inferences were "impermissible speculation" and a logical fallacy because they "assum[ed] a causal connection between two events merely because one follows the other" (citation and internal quotation marks omitted)). Breton argues that the Slater Brothers sued him after Clyde Snow ineffectively drafted the release and failed to properly advise him not to pay the beneficiaries because the ineffective release and advice gave the Slater Brothers an economic incentive to sue Breton. In other words, after Clyde Snow was negligent, the Slater Brothers sued Breton; therefore, the Slater Brothers sued Breton because Clyde Snow was negligent. We decline to adopt this circular reasoning.

¶13    Assuming Clyde Snow had drafted the release exactly as Breton wanted it, which is to say, containing a provision that without all fifteen signatures the release would not have become effective, then the result would be that if any fewer than all fifteen of the beneficiaries signed the release, all fifteen beneficiaries would have remained free to sue Breton. Thus, assuming Clyde Snow ineffectively drafted the release, Breton is not worse off by having three, rather than fifteen, beneficiaries free to sue him. Ultimately, we see no difference in the alleged harm Breton

---

[3](...continued)
because only causation was at issue in Clyde Snow's motion for summary judgment.

suffered in that there does not seem to be legal significance in the potential for Breton to be sued by three beneficiaries versus fifteen.

¶14    In addition, as the district court ruled, even if Breton had been satisfied with the release that Clyde Snow prepared, Clyde Snow "could not possibly have forced the Slater Brothers to sign [that] release[]." It is wholly speculative that the Slater Brothers, or for that matter, any of the other beneficiaries, would have signed a satisfactorily-drafted release.

¶15    Finally, we agree with the district court that Breton broke the chain of causation when he decided to pay the twelve beneficiaries without first obtaining a release from all fifteen of those beneficiaries. Breton acknowledged that he retained Clyde Snow to devise a plan to release him and his cotrustees from potential claims. Breton knew that if he did not obtain a release from all of the beneficiaries and especially the Slater Brothers given the antagonistic family history, he was at risk of being sued by whomever did not sign the release. Breton therefore knew that distributing monies to the beneficiaries who had signed the release before obtaining the signatures of all fifteen of the beneficiaries would leave the door open for the Slater Brothers to sue him. A reasonable jury simply could not disagree about the underlying undisputed fact that Breton knew of this possibility. Thus, Breton's action in paying the twelve beneficiaries without obtaining the Slater Brothers' releases was an intervening cause breaking any chain of causation, and the district court properly concluded that Breton caused his own harm.

¶16    For all of the above reasons, we affirm the district court's grant of summary judgment in favor of Clyde Snow.