2023 UT App 29

## THE UTAH COURT OF APPEALS

KYLIE NIELSEN,
Appellant,

*v.*

L. MILES LEBARON AND LEBARON AND JENSEN PC,
Appellees.

Opinion
No. 20210357-CA
Filed March 23, 2023

Second District Court, Farmington Department
The Honorable Rita Cornish
No. 200700783

Bruce M. Pritchett Jr., Attorney for Appellant

Gary T. Wight and Blake A. Hallock, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this
Opinion, in which JUDGE RYAN D. TENNEY and SENIOR JUDGE
KATE APPLEBY concurred.[1]

CHRISTIANSEN FORSTER, Judge:

¶1   Kylie Nielsen appeals the district court's dismissal of her complaint asserting legal malpractice against her attorney, L. Miles LeBaron, and his law firm, LeBaron & Jensen, PC (collectively, LeBaron). Based on a safe harbor provision in the Utah Uniform Probate Code, *see* Utah Code § 75-5-423, the district court determined that Kylie could not establish that LeBaron owed her a duty to safeguard funds she received from a settlement and dismissed the case. Because Kylie pleaded certain

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

facts that may entitle her to relief, we reverse the district court's dismissal and remand for further proceedings.

## BACKGROUND

¶2 In May 2014, Kylie, a minor child, tripped during a school safety demonstration, severely injuring her ankle.[2] Her parents, Andrew and Camille Nielsen (Mr. and Ms. Nielsen, respectively), retained LeBaron to bring a personal injury action against the school district on Kylie's behalf. The parties eventually agreed to settle the case for $100,000.

¶3 As a result of the agreement, the district court issued an order approving the settlement (the Order). The Order provides, in part,

> The balance of $61,246,85 [after deducting costs, fees, and medical expenses] shall be placed into a restricted Minor Child Trust Account, which is insured by either the NCUA or FDIC with ownership of the account to revert to [Kylie] without restriction on her 18th birthday. Prior to that time, NO MONEY MAY BE WITHDRAWN FROM THE ACCOUNT WITHOUT THIS COURT'S APPROVAL AND ORDER <u>and the account must be marked as such.</u>

> [Mr.] Nielsen and [Ms.] Nielsen are hereby appointed as co-conservators of the Estate of the

---

2. The demonstration was about the effects of alcohol consumption. Following her teacher's instructions, Kylie moved around the classroom while wearing vision-impairing goggles. Kylie tripped over a desk, injuring her ankle. Kylie's injuries resulted in multiple fractures resulting in two ankle surgeries, continued pain and suffering, and a diminished quality of life.

minor child for the purpose of executing the Releases and administering the funds recovered in this matter.

¶4 Several months later, LeBaron sent a check for $61,246.85 made out to "Andrew or Camille Nielsen" in their capacity as co-conservators. Sometime after LeBaron dispersed these settlement funds, Mr. Nielsen absconded with them.[3]

¶5 In September 2020, Kylie filed suit against LeBaron, asserting a claim of legal malpractice.[4] Kylie alleged that LeBaron, as Kylie's attorney, breached its fiduciary duty to safeguard her funds by failing to "deposit[] [the funds] into a Minor Child Trust Account" in compliance with the Order. Kylie asserted that this conduct fell "outside the ordinary standard of professional competence."[5]

¶6 In response to Kylie's complaint, LeBaron filed a motion under rule 12(b)(6) of the Utah Rules of Civil Procedure to dismiss for failure to state a claim upon which relief can be granted,

---

3. Mr. Nielsen has since been charged with Unlawful Dealing of Property by Fiduciary. *See generally* Utah Code § 76-6-513(3).

4. Kylie's legal malpractice claim rests on two theories: fiduciary duty and ordinary negligence. Because "the elements required to prove both theories . . . are substantially the same," *Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶ 23, 194 P.3d 931, we refer—for simplicity—only to Kylie's overarching legal malpractice claim.

5. Kylie also asserted LeBaron breached its fiduciary duty to her "by providing a check which either [Mr.] Nielsen or [Ms.] Nielsen could individually cash[] rather than requiring both [Mr.] Nielsen and [Ms.] Nielsen . . . [to cash the check together]." But Kylie does not raise this issue on appeal, so we do not address it.

contending that Kylie could not establish either the duty element or the causation element of a legal malpractice claim. Specifically, LeBaron asserted "the Utah Uniform Probate Code insulates [LeBaron] from liability by eliminating any duty to ensure a conservator properly expends funds in his or her care." Citing section 75-5-423 of the Utah Code—which states, "A person is not bound to see to the proper application of estate assets paid or delivered to a conservator"—LeBaron alleged "the Utah Code plainly puts the responsibility of proper estate administration on the minor's conservators, not attorneys."[6] *See* Utah Code § 75-5-423.

¶7     LeBaron also alleged that "even assuming there was a duty beyond merely issuing the check to [Kylie's] conservators," Kylie's claim should be dismissed because "it is clear that [LeBaron] did not cause [Kylie's] injuries." Specifically, LeBaron alleged that "the unforeseeable, intervening criminal conduct of Mr. Nielsen completely severed the causal chain between [LeBaron's] delivery of the Settlement Proceeds and [Kylie's] injury."

¶8     Kylie opposed LeBaron's 12(b)(6) motion, asserting that her initial complaint pleaded "sufficient facts to establish the

---

6. LeBaron also cited, as a source of immunity, section 75-5-102 of the Utah Uniform Probate Code. *See* Utah Code § 75-5-102(6) ("Any person who pays or delivers in accordance with provisions of this section is not responsible for the proper application thereof."). But as the district court correctly determined, section 75-5-102 is inapplicable for two sound reasons: first because the payment in question ($61,246.85) well exceeds the $15,000 statutory limit, *see id.* § 75-5-102(1), and second because section 75-5-102, by its own terms, does not apply if the person delivering funds "has actual knowledge that a conservator has been appointed," *id.* § 75-5-102(2)—knowledge of which LeBaron has at most conceded and at least cannot deny.

elements of legal malpractice." On the issue of duty, Kylie asserted LeBaron was bound by "the broad duties owed by an attorney to his minor client," as well as by those duties the Order imposed, and that the Utah Uniform Probate Code did not absolve LeBaron of these duties.

¶9    On the issue of causation, Kylie alleged, "[Mr.] Nielsen's criminal conduct does not sever the causal connection between [LeBaron's] actions and [Kylie's] damages," because Mr. Nielsen's conduct was "foreseeable." Specifically, Kylie asserted, "If the court did not reasonably foresee the possibility of one or both of [Kylie's] parents—as her conservators—absconding with the settlement proceeds, the court would not have included [the withdrawal restriction] requiring a court order to remove funds."

¶10    The district court granted LeBaron's motion to dismiss. Relying on section 75-5-423 of the Utah Uniform Probate Code, the court concluded LeBaron "did not owe [Kylie] a duty to ensure the conservators properly applied the settlement funds," reasoning that "once estate assets are paid or delivered to a conservator by a third party, that third party has no continuing duty to ensure the estate assets are properly applied." From there, the court concluded Kylie could not establish the element of duty generally and dismissed the case with prejudice. It did not reach the causation issue.

ISSUE AND STANDARD OF REVIEW

¶11    On appeal, Kylie contends that the district court erred in dismissing her legal malpractice claim. "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275. "A motion to dismiss should be granted only if, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled

to relief." *Id.* (quotation simplified). "We will affirm the dismissal of a complaint only where it clearly appears that the plaintiff would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Id.* (quotation simplified).

## ANALYSIS

¶12    To succeed in a legal malpractice action, a plaintiff must prove five elements: first, an attorney-client relationship existed; second, the attorney owed a duty to the client; third, the attorney breached this duty; fourth, this breach caused injury to the client; and fifth, actual damages exist. *Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶¶ 22–23, 194 P.3d 931. An attorney-client relationship exists between Kylie and LeBaron; this much is undisputed. The court did not reach the issues of breach, causation, or damages because it determined that LeBaron owed Kylie no duty. Kylie argues on appeal that the court erred in its duty determination. LeBaron defends the court's ruling and argues, alternatively, that if the court erred in its duty analysis, then we should affirm on the alternative ground that Kylie failed to state a claim with respect to causation.

## I. Duty

¶13    Kylie challenges the district court's conclusion that LeBaron did not owe her a duty in disbursing the settlement proceeds. Kylie identifies several potential sources of LeBaron's duty—the common law, the Order, and rule 1.15 of the Rules of Professional Conduct.[7] Because we agree that the common law

---

7. LeBaron alleges Kylie has not preserved her argument that rule 1.15 supports her assertion that an attorney has a duty to safeguard client funds. Although our analysis is independent of rule 1.15, we note at least two reasons why there is no

(continued…)

imposes a duty of reasonable diligence with respect to the management of client funds, we need not decide whether the Order or the Rules of Professional Conduct likewise imposed a duty on LeBaron.[8]

---

preservation issue here. First, although it is true that Kylie did not cite rule 1.15 in her complaint or motion opposing dismissal, she twice referenced rule 1.15 before the district court during the motion hearing, and the court considered and orally ruled on it. *See Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 ("[O]nce trial counsel has raised an issue before the trial court, and the trial court has considered the issue, the issue is preserved for appeal."). Second, even if Kylie had not cited rule 1.15 during the motion hearing, we would still consider her rule 1.15 argument preserved. "[P]reservation occurs on an issue-by-issue or claim-by-claim basis," *State v. Flora*, 2020 UT 2, ¶ 17, 459 P.3d 975, meaning that new arguments—such as "citing new authority or cases"—"when brought under a properly preserved issue or theory, do not require an exception to preservation," *State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443. And Kylie preserved the general issue of whether her attorney had a duty to safeguard her funds, as this was precisely the issue on which the district court dismissed the case. Thus, Kylie did not need to explicitly raise rule 1.15 to address it on appeal. The district court noted as much during the motion hearing. After LeBaron objected to a lack of briefing on rule 1.15, the court explained that "the *content* of [the rule 1.15] argument has always been in [Kylie's] brief." (Emphasis added.)

8. LeBaron asserts the common law source of an attorney's fiduciary duty is an unpreserved issue. Although Kylie did not assert below the common law as a source of duty, she preserved the general duty issue, so there is no preservation issue here. *See supra* note 7.

¶14     Whether a duty exists is "a matter of law" determined "on a categorical basis for a given class of tort claims." *Mower v. Baird*, 2018 UT 29, ¶ 16, 422 P.3d 837 (quotation simplified). Because duty "should be articulated in relatively clear . . . bright-line rules of law applicable to a general class of cases," *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228 (quotation simplified), "case-specific analyses are unwarranted at the duty stage of the negligence inquiry," *Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, ¶¶ 18–19, 514 P.3d 1209. Duty "relates to the general relationship between the alleged tortfeasor and the victim and the general foreseeability of harm" rather than "the specifics of the alleged tortious conduct such as the specific mechanism of the harm." *Id.* ¶ 18 (quotation simplified). When "the existence of the duty in question has already been established," the duty inquiry ends; there is no need for the court to reach a case-specific, fact-dependent conclusion regarding the existence of a duty. *Id.* ¶ 15. It is only at "the next steps of the negligence analysis—breach and proximate cause"—that "case-specific" factors may be analyzed, and at that stage, such matters are typically "questions for the fact finder." *Id.* ¶ 19 (quotation simplified).

¶15     For example, in *Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, 514 P.3d 1209, the district court granted defendant Wal-Mart's motion for summary judgment on the ground that it "owed no duty" to the plaintiff, a customer injured while shopping at a Wal-Mart. *Id.* ¶ 1. To reach this conclusion, the court focused on facts such as "whether it would be foreseeable that Davis would move within inches of Wal-Mart's employee, stoop below the employee's field of vision, and do so without alerting the employee to her presence or waiting for the employee to finish returning merchandise to the top shelf." *Id.* ¶ 17 (quotation simplified). This court concluded that such a "case-specific" analysis was "unwarranted at the duty stage of the negligence inquiry." *Id.* ¶ 18. It explained that "[b]ecause [the plaintiff] was Wal-Mart's invitee, it's settled that Wal-Mart owed [her] a duty of care" as a matter of law because "a business . . . owe[s] a duty of

reasonable care to its invitees." *Id.* ¶¶ 12, 15. The facts on which the court relied to conduct its duty analysis pertained to "questions of breach, not duty," and while Wal-Mart theoretically could have argued that the "accident was so unforeseeable that no reasonable mind could conclude that Wal-Mart had breached the duty of reasonable care . . . , the district court's analysis turned on duty, not breach," and its conclusion that Wal-Mart owed no duty was therefore incorrect. *See id.* ¶ 28.

¶16　The district court in this case made the same error that the district court made in *Davis*—namely, considering specific facts that were more appropriate to a breach analysis when it erroneously concluded that LeBaron owed Kylie no duty. Rather than consider an attorney's categorical duties to a client, the court assessed whether LeBaron had a narrower duty "to ensure the conservators properly applied the settlement funds."[9] It concluded that LeBaron owed no such duty by relying on section 75-5-423 of Utah's Uniform Probate Code, which limits the liability of certain third parties for the actions of a conservator.[10]

---

9. Not only was this conclusion based on the wrong legal standard, but it appears to have overlooked Kylie's actual argument. Kylie did not assert that LeBaron had a duty to somehow prevent her parents from using her funds inappropriately once it transferred those funds; rather, she asserts that LeBaron's duty precluded it from transferring the funds to her parents in the first place.

10. Section 75-5-423 provides,

> A person who in good faith either assists a conservator or deals with him for value in any transaction, other than those requiring a court order as provided in Section 75-5-408, is protected as if the conservator properly exercised the power. The fact

(continued…)

¶17    But when it comes to the attorney-client relationship, an attorney owes a general "duty to act with reasonable diligence" toward their client, *Brown v. Glover*, 2000 UT 89, ¶ 37, 16 P.3d 540, employing "such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake," *Watkiss & Saperstein v. Williams*, 931 P.2d 840, 846 (Utah 1996) (quotation simplified); *see also Harline v. Barker*, 854 P.2d 595, 599 n.3 (Utah Ct. App. 1993) ("The duty of [an attorney] [is] to represent [a client] with 'competence and diligence.'"). Appropriately safeguarding client property falls within an attorney's general duty of reasonable diligence. *See In re Discipline of Bates*, 2017 UT 11, ¶ 47, 391 P.3d 1039 ("[T]he duty to protect client property is significant. . . . Clients trust their attorney to safeguard the property they leave in their attorney's possession."). Thus, if Kylie can present facts demonstrating that a lawyer of "ordinary skill and capacity" would not have transferred the funds directly to the Nielsens, she could successfully prove a claim for legal malpractice or negligence.

¶18    Although section 75-5-423 might support the conclusion that LeBaron did not breach its duty to Kylie, it could not entirely negate LeBaron's broad common law duty of reasonable diligence. Indeed, LeBaron's duty exists as a matter of law, and any facts that could negate this bright-line duty must be considered at the breach stage of the analysis. *See Jeffs*, 2012 UT 11,

---

that a person knowingly deals with a conservator does not alone require the person to inquire into the existence of a power or the propriety of its exercise, except that restrictions on powers of conservators which are endorsed on letters as provided in Section 75-5-426 are effective as to third persons. A person is not bound to see to the proper application of estate assets paid or delivered to a conservator.

Utah Code § 75-5-423.

¶ 24. Even assuming the district court correctly found LeBaron was not *specifically* required, either by court order or otherwise,[11] to deposit Kylie's settlement funds directly into a trust account—a case-specific determination to be made by the finder of fact at the breach stage of the analysis—it does not follow that LeBaron owed *no* legal duty to Kylie. Whether LeBaron's delivery of the

---

11. We note also that while Kylie is correct that attorneys have a professional duty to obey "all lawful orders of the court," *see, e.g.*, *Gilbert v. Utah State Bar*, 2016 UT 32, ¶ 35, 379 P.3d 1247 ("[A]n attorney has a professional obligation to comply with a court order . . . ."), her assertion that the Order creates a fiduciary duty in the first instance is not obvious. As a source of duty, the Order is ambiguous. Although it directs that the balance of Kylie's settlement funds "shall be placed into a restricted Minor Child Trust Account," it does not indicate who would be responsible for completing that transaction. Kylie concedes as much, and the district court found the Order "placed no separate duty on [LeBaron] to deposit the funds in a minor child trust account." Kylie contends the district court's interpretation was improper, asserting (in tension with her earlier argument) that, because "the funds were already in LeBaron's trust account, . . . [the Order] was sufficiently clear that LeBaron should have deposited the funds in a protected account." Kylie further asserts that "LeBaron conceded by its actions that it could have protected its client funds," insofar as LeBaron held Kylie's funds "in the firm's trust account" for four months before releasing them to the conservators. But we find both arguments unpersuasive. We fail to see how the location of the funds resolves the Order's ambiguity. Moreover, that LeBaron *could* have protected client funds does not illuminate whether LeBaron *had a duty* to do so. And more to the point, LeBaron's concession of a duty—or its denial, for that matter—has no bearing on whether a categorical duty exists. Our common law is clear that it does. We thus decline to resolve the Order's ambiguity or to analyze the district court's finding, because the common law provides a valid source of duty.

settlement funds directly to the Nielsens was a breach of its general duty of reasonable diligence is a determination that requires further factual development.[12]

## II. Causation

¶19   Alternatively, LeBaron asks this court to "affirm the district court's order of dismissal because [Kylie] cannot establish . . . the . . . causation element[] of her malpractice claims." LeBaron asserts that Kylie "cannot show that [LeBaron's] actions were the proximate cause of her damages" because Mr. Nielsen was an "unforeseeable, intervening cause" that "broke the chain of causation." Although the district court did not "reach the question" of causation, LeBaron asks this court to affirm the district court's decision to dismiss on this alternative ground. *See generally Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988) ("[W]e may affirm trial court decisions on any proper ground(s), despite the trial court's having assigned another reason for its ruling.").

¶20   Our decision to affirm the district court on an alternative ground, even one that "presents a question purely of law," is discretionary. *Croft v. Morgan County*, 2021 UT 46, ¶ 43, 496 P.3d 83. "In some circumstances, we may benefit from the district court's analysis of the alternate grounds in the first instance." *Id.*

---

12. During oral argument before this court, counsel for LeBaron argued that it is customary for an attorney to deliver settlement funds directly to conservators rather than to deposit them into specific accounts. This seems to us to be a factual question regarding breach that is not properly decided at the motion to dismiss stage. Again, at this stage, the court must "accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991).

Such is the case here, where there is a "vacuum of factual development," *see id.* ¶ 48, on the foreseeability question.

¶21    This vacuum is especially concerning in the context of causation, which is a "highly fact-sensitive element of any cause of action" and one that may be resolved as a matter of law only "when the facts are so clear that reasonable persons could not disagree." *Breton v. Clyde Snow & Sessions*, 2013 UT App 65, ¶ 10, 299 P.3d 13 (quotation simplified). In short, rarely can proximate cause be resolved without a finder of fact making that determination, *see Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 486 (Utah Ct. App. 1991), *aff'd*, 862 P.2d 1342 (Utah 1993), and we see no reason why this case should be the outlier.

¶22    Indeed, based on the record before us, we do not believe causation could be resolved *without* a fact finder. LeBaron contends that the court's entrusting Mr. Nielsen as conservator in the first place suggests it was unforeseeable that Mr. Nielsen would abscond with the funds, while Kylie contends that the Order would not have included a withdrawal restriction had the court not foreseen a conservator absconding with the funds. Both positions seem reasonable to us. Accordingly, it does not seem to us that the facts are "so clear" that reasonable minds could not disagree, *see Breton*, 2013 UT App 65, ¶ 10 (quotation simplified), and so we decline to affirm the district court's dismissal on this alternative theory.

CONCLUSION

¶23    Because an attorney-client relationship existed between Kylie and LeBaron, LeBaron owed Kylie a duty of reasonable diligence. Thus, the district court erred in dismissing Kylie's complaint on the ground that LeBaron owed Kylie no duty. We therefore reverse the district court's dismissal and remand for further proceedings.

—————————